**The STATE of Ohio, Appellant,**

v.

**CONGENI, Appellee.**

[Cite as *State v. Congeni* (1995), 104 Ohio App.3d 726.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67226.

Decided June 19, 1995.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Jeffrey H. Margolis,* Assistant Prosecuting Attorney, for appellant.

*James R. Willis* and *Clarence Rogers,* for appellee.

HARPER, Judge.

Appellant, the state of Ohio, appeals from the suppression of evidence by the Cuyahoga County Court of Common Pleas in a hearing on appellee William Congeni's indictment for gambling, in violation of R.C. 2915.02. For the reasons that follow, we affirm.

## I

During the suppression hearing, Detective Brian Heffernan of the Cleveland Police Department testified that on July 8, 1992 at about 8:00 p.m. he was on patrol with five other police officers. He observed a woman, later identified as Erika Risher, get out of a Cadillac automobile on Lorain Avenue near West 44th Street, in Cleveland, Ohio. The car drove off slowly on Lorain Avenue and later made a right turn onto West 44th Street. Risher was observed going into a barbershop. Detective Heffernan testified that he believed at that time that prostitution activity may have been occurring. Risher came out of the back of the barbershop and approached the Cadillac, which was parked behind the barbershop.

Detective Heffernan drove up behind the Cadillac and activated his police lights and siren. Sergeant Gingell, who was with Detective Heffernan, approached Risher, who was found later with a crack cocaine pipe. Detective Heffernan approached the Cadillac and observed two males and one female. One of the males was appellee, the driver of the car. The other two passengers were in the back seat. Detective Heffernan observed the two people in the back seat "shoveling things with their hands" as if attempting to conceal something. Detective Heffernan ordered all three occupants out of the car. They were patted down for weapons, and none were found. Detective Heffernan searched the back seat of the vehicle and found two pieces of a metal coat hanger commonly associated with smoking crack cocaine. All four individuals were then arrested for drug law violation.

The arrested individuals were placed in the backs of various police cars. Other police officers were called to the scene. Detective Escalante was among the later officers to arrive at the scene. Detective Heffernan discovered a white powder and a pager in the car's glove compartment. Detective Heffernan also seized six hundred dollars in cash, which appellee informed them was on the sun visor of the car. Although Detective Heffernan testified that the search was merely an inventory of the car for safekeeping, since the car was about to be towed, the items discovered were not placed on the tow sheet but were rather taken as evidence for use in the drug offense charges. Detective Heffernan further testified that he observed Detective Escalante open the trunk of the car and

remove a locked briefcase. Appellee did not give consent to search the briefcase. Detective Escalante opened one side of the briefcase, and looked into it.

On cross-examination, Detective Heffernan testified that appellee, the driver of the car, had not broken any traffic laws. Detective Heffernan's reason for keeping attention on the car was that he had observed Risher get out of the car. Detective Heffernan admitted that at the time of the search of the car, appellee had not been charged with any offense. He was not free to leave the area. Detective Heffernan did not observe appellee make any motions while he was seated in the car.

Detective Charles Escalante testified that he arrived at the scene and noticed Risher, whom he knew from a prior encounter with the law. He was given appellee's driver's license. Detective Escalante recognized appellee's name from a previous gambling investigation he had conducted. Detective Escalante further testified that he inventoried the car. He observed a briefcase in the trunk of the car. The briefcase was locked. He noticed that the right latch of the briefcase was locked while the left latch was open. He pried up the lid on the left side of the briefcase and looked inside it.

Detective Escalante further testified that he opened the briefcase to determine if it contained valuables like cash or jewelry that could be listed separately in the inventory sheet. He did it to protect all the parties and avoid a possible later accusation that things had been removed from the briefcase by the police. He testified that it was a normal police procedure to look for such items when conducting an inventory of a vehicle's contents. When he opened one side of the briefcase, Detective Escalante observed some tapes and a ledger book. He believed the contents of the briefcase were gambling paraphernalia. Detective Escalante testified that he was aware that appellee was involved in gambling based on their prior meeting.

After noticing some of the contents of the briefcase, Detective Escalante informed Sergeant Gingell of his observation. The officers subsequently obtained a search warrant and conducted a detailed search of the briefcase. The search warrant was obtained based on the items Detective Escalante observed when he initially opened the briefcase without a warrant.

During the search of the briefcase, gambling paraphernalia were found. Appellee was charged with violating gambling laws.

Detective Escalante admitted under cross-examination that until he opened the briefcase he had no reason to believe that there was anything in it that violated the law.

Appellee testified that he was the driver of the Cadillac on the evening in question. He had known Christiana O'Dell, a.k.a. Erika Risher, for almost one

year. He had allowed O'Dell to use his home address of 6911 Bradley Street in Parma, Ohio for her correspondence. Appellee testified that a letter postmarked July 6, 1992 came to his home address. The letter, which was introduced at the hearing, came from "Devito Associates, Attorneys" and was addressed to O'Dell. He drove to the barbershop on Lorain Avenue because O'Dell said she had hidden her purse behind the shop. He stopped on the corner of Lorain Avenue and West 44th Street because the first place he had stopped at near the barbershop was a bus stop and a busy corner. Appellee further testified that he "pulled around because she wanted to get out and get her purse." When the police asked him to give them the key combination to the briefcase, he refused. He did not authorize the officers to search his car or the trunk.

On cross-examination, appellee testified that he did not know the briefcase was in the trunk. He talked to his brother after his arrest and discovered that the briefcase belonged to his brother. He had been looking for O'Dell and found her on West 48th Street. He dropped her off by the barbershop to pick up her purse. Appellee testified that he could not park because it was a bus stop. He pulled around the corner to wait for her.

## II

Appellant assigns the following errors for our review:

"Assignment of Error No. I

The initial search of the briefcase by Detective Escalante was properly done and a minimal intrusion into the appellee's privacy that was well within the bounds of a valid inventory search.

"Assignment of Error No. II

There was probable cause to support the opening up of the briefcase by Detective Escalante and therefore all items within the briefcase are admissible in a trial of the appellee."

The sole issue presented is whether the search of the briefcase found in the locked trunk of appellee's vehicle was properly conducted within the confines of the Fourth Amendment protection against unreasonable intrusion into the privacy of citizens by the government.

It is settled law that the seizure of an individual by a law enforcement officer must be justified by the showing of "specific and articulable facts" indicating that the seizure was reasonable. *Terry v. Ohio* (1968), 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889, 906; *State v. Freeman* (1980), 64 Ohio St.2d 291, 294, 18 O.O.3d 472, 473–474, 414 N.E.2d 1044, 1046. Thus, the first hurdle that must be cleared in the area of Fourth Amendment jurisprudence

dealing with a stop and seizure and subsequent search of an individual or his belongings is the justification of the initial stop. *Terry.* The initial stop must be reasonable; otherwise the search following an illegal stop is illegal even if the search produces contraband.

The evidence, though contraband, must be disregarded because it is a forbidden fruit harvested from a poisonous tree.

In *Brown v. Texas* (1979), 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 362, the United States Supreme Court in a unanimous decision held that:

"[T]he Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers."

The *Brown* court held that a person's suspicious appearance provided no justification to detain him and demand that he identify himself. Again, in *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660, the United States Supreme Court in condemning random stops of vehicles to check the validity of the drivers' licenses and the vehicles' registration held that without articulable and reasonable suspicion that either the vehicle or an occupant is subject to seizure for violation of law a detention of an automobile driver is unreasonable under the Fourth Amendment.

So, we begin our first inquiry in the instant case by focusing upon whether Detective Heffernan harbored an articulable and reasonable suspicion that appellee was violating the law at the time appellee was detained.

The trial court made the following observation:

"The court is concerned with regard to the facts of this case that the evidence presented at this hearing did not indicate any specific illegal acts that Mr. Congeni engaged in prior to there being a stop of the vehicle."

Detective Heffernan testified that he did not observe appellee do anything illegal. He decided to approach the car because O'Dell came out of the car, which had three other people in it. Detective Heffernan arrested appellee even though his attention was not focused on appellee and he never paid attention to what appellee was doing. He recognized O'Dell as a prostitute and concluded that the people in the car were soliciting prostitution. When Detective Heffernan came to the car he observed two passengers who made some movements which indicated to him that they were hiding something. He then ordered them out of the car, including appellee, and patted them for weapons. He found no weapons. He then put them in another officer's car and began searching their vehicle. It was during this search that he discovered what the two passengers were hiding under

their seat.  Detective Heffernan testified that he did not see anything in plain view.

A stop and warrantless arrest of an individual must be based on articulable and reasonable suspicion that the arrested individual is himself engaged or about to be engaged in a crime.  It cannot be based on the actions of his associates.  In the instant case, we are at a loss as to why appellee was arrested by an officer who testified that he did not observe him do anything illegal.  Even if we are to liberalize the crime of solicitation to accommodate the state's contention, we still consider the state's contention overbroad in including in the elements of solicitation the entering and exiting of a vehicle.  Such a broad interpretation would subject virtually every citizen to a criminal prosecution for solicitation.

After carefully reviewing the facts and circumstances of this case, we conclude that appellee's initial stop was unreasonable.

We focus our second inquiry on the state's main argument, which is whether the opening of appellee's briefcase was pursuant to a lawful inventory search. The state makes the following arguments in support of its contention:

"In the instant case, Detective Escalante testified that he looked in the briefcase to 'determine if it contained valuables, anything that we might have to list separately on the form or return to the district with us, items of value, cash, jewelry, that sort of thing.'  (T. 94.)  Clearly then, the main purpose of Det. Escalante's purview [sic] into the briefcase was a benign purpose, that of an inventory search for the protection of all parties involved.  It is this benign purpose that makes the search reasonable and legitimate.  The fact that Det. Escalante's search was for benign purposes is further supported by his actions after its initial opening.  Immediately upon observing questionable material inside the briefcase, he closed it and obtained a warrant for further investigation. Clearly then, his initial search was minimal and solely to look for valuables."

This court recently dealt with the legality of inventory searches in an opinion written by Judge Nahra in State v. Collura (1991), 72 Ohio App.3d 364, 370, 594 N.E.2d 975, 979.  In reversing the trial court's denial of a motion to suppress this court held that:

"Warrantless inventory searches of automobiles are only permissible where the automobile has been legally impounded, and where the inventory search is not merely a pretext for an investigative search.  South Dakota v. Opperman (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; State v. Robinson (1979), 58 Ohio St.2d 478, 12 O.O.3d 394, 391 N.E.2d 317, certiorari denied (1979), 444 U.S. 942, 100 S.Ct. 297, 62 L.Ed.2d 309."

■ We reiterate that an inventory search can be legal only if the automobile which is subject to the search is legally impounded and the inventory search is not merely a pretext for an investigative search. The inventory must aim at securing or protecting the car and its contents. *South Dakota v. Opperman, supra,* 428 U.S. at 373, 96 S.Ct. at 3099.

In *State v. Caponi* (1984), 12 Ohio St.3d 302, 12 OBR 375, 466 N.E.2d 551, syllabus, the Ohio Supreme Court held that:

"A search which is conducted with an investigatory intent, and which is not conducted in the manner of an inventory search, does not constitute an 'inventory search' and may not be used as a pretext to conduct a warrantless evidentiary search."

In discussing *South Dakota v. Opperman,* the Ohio Supreme Court stated

"The court concluded that a routine inventory search of a lawfully impounded automobile is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice, and when the evidence does not demonstrate the procedure involved is merely a pretext for an evidentiary search of the impounded automobile. It appears logical to conclude from this that a pretextual search is not an inventory search." *State v. Robinson* (1979), 58 Ohio St.2d 478, 480, 12 O.O.3d 394, 395, 391 N.E.2d 317, 318.

■ The issue then is whether the search of the briefcase was an inventory search or a pretextual search. If it is an inventory search, then we shall determine whether it was conducted pursuant to the standard Cleveland Police policy to be permissible within the carefully carved-out exception to the general rule which regards the opening of a closed container as a great intrusion into the privacy of its owner even when the container is found in an automobile. See *Arkansas v. Sanders* (1979), 442 U.S. 753, 762–764, 99 S.Ct. 2586, 2592–2593, 61 L.Ed.2d 235; *United States v. Chadwick* (1977), 433 U.S. 1, 13, 97 S.Ct. 2476, 2484–2485, 53 L.Ed.2d 538, 549–550.

The state argues that the inventory search was conducted pursuant to the standard Cleveland Police policy, stating as follows:

"Due to all of the foregoing rationale, the State argues that the benign nature of the inventory search conducted pursuant to standard departmental and officer [*sic* ] police, practice and procedure is a sufficient reason to open the briefcase in the minimal intrusive manner as was done by Det. Escalante."

However, this assertion does not comport with the facts as presented, and the state has failed to present any evidence to support its standard department policy argument. The trial court made the following observations:

"Furthermore, there was no evidence presented that the briefcase itself contained anything of an illegal nature. It was just a briefcase. To the extent that the search of the trunk was incidental to impoundment of the car and, therefore, could be justified as part of an inventory of the vehicle, the taking of the briefcase from the trunk may have been appropriate. However, opening it at the scene was not appropriate for the reasons I have just stated, and I would add that the policy of the Cleveland Police Department as evidenced by State's Exhibit No. 1, which is the general police order, Cleveland Police Department, effective July 1st, 1987, Vehicle Tow Authorization Form CR711–175 Revised, indicates that property, valuables and so forth found in a vehicle are to be tagged and forwarded to the property unit of the Police Department."

There is no evidence in this case of any standardized policy or practice of the Cleveland Police Department specifically governing the opening of closed containers found during inventory searches.

The United States Supreme Court in a recent case dealing with the issue of a closed container found in an automobile during an inventory search stated as follows:

"In the present case, the Supreme Court of Florida found that the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search. We hold that absent such a policy, the instant search was not sufficiently regulated to satisfy the Fourth Amendment and that the marijuana which was found in the suitcase, therefore, was properly suppressed by the Supreme Court of Florida." *Florida v. Wells* (1990), 495 U.S. 1, 4–5, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1; see, also, *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572.

The Ohio Supreme Court also recently dealt with the issue of law enforcement policy on closed containers found during an inventory search in *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743. Hathman was arrested on a routine traffic violation. He was taken into custody after it was discovered that he had given a fake name and was driving a stolen vehicle. Before his vehicle was towed, a state trooper commenced an inventory search of his vehicle. The trooper found plastic bags containing cocaine in the trunk of Hathman's vehicle.

At the suppression hearing, the trooper testified that standard procedure was to inventory the contents of an impounded vehicle before towing to ensure that nothing is lost or taken from the vehicle while in police custody.[1]

---

1. The trooper's testimony in *Hathman* is similar to Detective Escalante's testimony in the present case. The Ohio Supreme Court was not persuaded in *Hathman;* we are not persuaded either in the present case.

In affirming the suppression of the evidence of the bag and its contents, the court held:

"With the foregoing discussion in mind, we believe that in order to satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. *Opperman, Bertine* and *Wells, supra.* Further, if, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers. *Bertine* and *Wells, supra.*

"In the case at bar, there is ample evidence that the decision to conduct the inventory search of appellee's automobile was made in accordance with standardized procedures of the Ohio State Highway Patrol. Further, we are satisfied that the inventory search of appellee's vehicle was conducted in good faith, and not for the sole purpose of investigation. However, our reading of *Bertine* and *Wells, supra,* is that the existence of a reasonable policy or procedure governing inventory searches in general is insufficient to justify the opening of closed containers encountered during the inventory search. Rather, some articulated policy must also exist which regulates the opening of containers found during the authorized inventory search." *Id.,* 65 Ohio St.3d at 407–408, 604 N.E.2d at 746.

In applying the *Hathman* and *Wells* decisions to the instant case, we hold that the trial court properly suppressed the evidence found in appellee's briefcase. The search, therefore, was not a proper inventory search where there were no procedures for the police to follow when faced with a closed container in a vehicle.

In another argument, the state attempts to justify the police officer's action by contending that the police had probable cause to search the briefcase before obtaining a search warrant. It states:

"In the instant case, the police initially observed conduct which they believed to be prostitution activity. Based upon that, they properly stopped the vehicle in question. Upon stopping the vehicle, police observed suspicious activity in the vehicle. Upon further investigation, they determined that the suspicious activity was in fact drug-related activity. The drug-related activity involved the use of crack cocaine. In fact, crack cocaine was found within the vehicle. There was also a known gambler in the vehicle. That activity in its totality, through the eyes of a trained law enforcement officer experienced in illicit narcotic activity, is sufficient to create probable cause that contraband in the form of crack cocaine may be located anywhere within the vehicle. *Illinois v. Gates* (1983) [462 U.S. 213], 103 S.Ct. 2317 [76 L.Ed.2d 527]; *United States v. Cortez* (1981), 449 U.S.

411 [101 S.Ct. 690, 66 L.Ed.2d 621]; *State v. Andrews* (1991), 57 Ohio St.3d 86 [565 N.E.2d 1271]; *State v. Freeman* (1980), 64 Ohio St.2d 291 [18 O.O.3d 472, 414 N.E.2d 1044]. Therefore, Det. Escalante had probable cause to believe crack cocaine may have been in the briefcase which he retrieved from the trunk of the vehicle. It is reasonable to believe a briefcase may contain drugs or drug paraphernalia. Based upon that probable cause, he was permitted to open up the briefcase to determine whether or not narcotic contraband was within the briefcase. It is not necessary that this be a stated reason for opening the briefcase, rather it is sufficient that the probable cause exists. Because probable cause existed for opening up of the briefcase Det. Escalante's actions were proper and the evidence should be admitted."

The state's argument on probable cause to justify the intrusion says, in so many words, "If we do not get you in one way we shall get you in the other, but either way we shall get you." This Catch–22 argument, that if there is no probable cause then it is a permissible inventory search, and if it is not an inventory search then of course the police had a probable cause, causes a considerable and a disturbing pause. It is bad enough that there are some exceptions to the Fourth Amendment protection but to permit such an argument as put forth by the state is tantamount to declaring every action of law enforcement in the area of the Fourth Amendment jurisprudence an exception to the constitutional protection against unreasonable governmental search or seizure.

The state's argument also contradicts the testimony of Officer Escalante during cross-examination. "Question: And until you open it, you have no reason to believe that there was anything that violated the law in there, did you? Answer: That is correct." It is also regrettable that all the cases cited by the state to support its probable cause argument have no relevance to the facts or the law of this case. *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, dealt with the constitutionality of a warrant issued based on hearsay. *United States v. Cortez, supra,* held that reasonable suspicion that criminal activity is afoot must be based on the totality of the circumstances. *State v. Andrews, supra,* held that a police officer can stop a person in a so-called high crime area running away from a police cruiser if the officer has a reasonable belief that a crime was committed or about to be committed. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, held that articulable facts to support a stop must be based on the totality of the circumstances and also that a party has no standing to challenge the search of property that was abandoned.

Therefore, having found no case law to support the state's probable cause contention, we affirm the trial court's suppression of evidence obtained by the illegal intrusion into appellee's briefcase by Detective Escalante. The detective's

actions were not justified under any of the exceptions to the Fourth Amendment's protection against an unreasonable search and seizure.

*Judgment affirmed.*

NAHRA, J., concurs.

O'DONNELL, J., dissents.

O'DONNELL, Judge, dissenting.

I respectfully dissent from the conclusion reached by the majority that the initial stop was unreasonable, and from the decision to affirm the trial court's suppression of evidence in this case.

Based on my review of the facts and controlling case law, I believe both the initial stop of the vehicle and the on-scene police actions regarding the briefcase are constitutional and constitute good police work. Accordingly, I dissent.

In my view, the initial stop of the vehicle was not unreasonable. At the trial level, both defense counsel and the trial judge expressed this same opinion. In its ruling, in language which immediately follows the passage quoted by the majority, the trial court stated:

"[D]efense counsel conceded that the initial stop and search of the immediate area in the passenger compartment was justified under the circumstances. And the Court does not disagree with that, that did not warrant, or is questionable that warranted the search of the trunk of this car * * *." See transcript of proceedings of April 22, 1994, page 4. See, also, transcript of the evidentiary hearing, March 3, 1993, at 148–150 (colloquy between the trial court and defense counsel in which defense counsel concedes that there is no constitutional infirmity from the time of the initial stop through the search for weapons).

As a consequence, appellee has waived this issue and this court need not consider appellee's assertions regarding the propriety of the initial stop. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156, and cited with approval in *State v. Bidinost* (1994), 71 Ohio St.3d 449, 453, 644 N.E.2d 318, 322–323.

Additionally, the facts demonstrate that the initial stop was permissible. Vice detectives, who were involved in a prostitution detail, observed a known prostitute exit a Cadillac, enter a barbershop which was "the source of numerous complaints of prostitutes hanging around," and approach the Cadillac after it had turned the corner and she had left the barbershop. Through their experience, the officers knew that this sequence of events was consistent with an attempt by the prostitute to avoid police. Additionally, when the officers approached the

Cadillac, the woman who had left the barbershop became violent and the two individuals in the back seat of the car "began shoveling things with their hands."

Certainly, these circumstances present the "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906. In light of this entire sequence of events, the initial stop was appropriate with respect to appellee—the driver of the vehicle who appeared to the officers to be evading their surveillance. The initial stop in this case was not unreasonable and does not in my view provide a basis to affirm the trial court's grant of the motion to suppress evidence.

Rather, the crux of this appeal is whether the act of police officers while conducting a routine inventory search of the car, in looking into one side of an unlocked briefcase, constituted an unreasonable search prohibited by the Fourth Amendment. The officers located the briefcase in the trunk of the car while preparing an inventory of personal property pursuant to an established written Cleveland Police Department procedure to remove property such as jewelry, cameras, radios, TVs, golf clubs, clothing or other valuables prior to towing.

Recognized needs for conducting an inventory search of automobiles include protection of the property while in police custody, avoidance of disputes about lost or stolen property, and elimination of potential danger emanating from the property. See *South Dakota v. Opperman* (1976), 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000, 1005, and cases cited therein. Such searches are now a well-recognized exception to the requirement of obtaining a warrant under the Fourth Amendment. *Colorado v. Bertine* (1987), 479 U.S. 367, 369, 371, 107 S.Ct. 738, 740, 741, 93 L.Ed.2d 739, 745. Thus, the activities of these officers are questioned here only insofar as they encountered a briefcase that the majority characterizes as a closed container.

In *Bertine, supra,* the United States Supreme Court determined that in the absence of a showing that police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation, evidence discovered during an inventory search was admissible. There, the court upheld the search of a van during which officers located a backpack behind the front seat and inside observed a nylon bag containing metal canisters which were opened and found to contain $700 in cash, cocaine, methaqualone tablets, and cocaine paraphernalia.

But in *Florida v. Wells* (1992), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, in reviewing a situation where the inventory of the vehicle turned up a locked suitcase in the trunk of the car, and where the trooper instructed employees of the impounding facility to force the suitcase open, which revealed a garbage bag containing a considerable amount of marijuana, the court held that absent any policy with respect to the opening of closed containers encountered during an

inventory search, the search was insufficiently regulated to satisfy the Fourth Amendment. The court further stated at 495 U.S. at 4, 110 S.Ct. at 1635, 109 L.Ed.2d at 6:

"A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself."

And finally, in *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743, the court held in its syllabus:

"2. If, during a valid inventory search of a lawfully impounded vehicle, a law enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers." (Citing *Bertine* and *Wells, supra.*)

The distinctions to be drawn in the instant case which distinguish it from *Wells, supra*, are that the police did not force open this briefcase; instead, one officer peered into the unlocked left corner in furtherance of the defined and regulated inventory search, not acting in bad faith or for the sole purpose of investigation. Concerned about transcending the scope of the inventory search, the officers *obtained a warrant before opening the briefcase.* This is the procedural safeguard which the Fourth Amendment demands. This action then distinguishes this case from *Wells* and removes it from *Hathman, supra*, where no warrant was obtained.

I cannot comprehend why, in view of such clear directives as *Bertine, Wells*, and now *Hathman*, law departments do not promulgate the policies demanded by those decisions to facilitate the work of the police officers who daily encounter this kind of situation. The United States Supreme Court has approved of one policy, for example, authorizing the opening of every closed container encountered in a search. See *Bertine, supra.* On the other hand, to blindly transport all closed container items unopened or taped shut or otherwise sealed at the scene upon discovery to the police station for later review or inventory exposes police authorities and citizens alike to all of the risks detailed in *Opperman:* theft or loss of the property, civil litigation, and dangerous material being delivered to police stations.

Because the initial stop of this vehicle was not unreasonable under *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and because the inventory search of the vehicle was done in accordance with standard police procedures, and because when the briefcase was encountered, it was only locked on one side and the officer in furtherance of his inventory duties made a good faith cursory examination and upon reasonable suspicion obtained a search warrant before

opening the briefcase, I would reverse the judgment of the trial court on the motion to suppress, and permit this evidence to be used at trial. Accordingly, I dissent.