The STATE of Ohio, Appellee,

v.

ROSE, Appellant.

[Cite as *State v. Rose* (1997), 118 Ohio App.3d 864.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69599.

Decided March 31, 1997.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Jeffrey Margolis,* Assistant Prosecuting Attorney, for appellee.

*Jean M. Gallagher,* Assistant Public Defender, for appellant.

PATRICIA ANN BLACKMON, Judge.

Defendant-appellant, Demetrius Rose, appeals a decision by the trial court convicting him of two counts of drug trafficking and sentencing him accordingly. Rose assigns the following errors for our review:

"I.  Mr. Rose's rights under Sect. 14, Art. I of the Ohio Constitution and the Fourth and Fourteenth Amendments to the United States Constitution were violated when his motion to suppress was denied despite the failure of the prosecution to present the substantial evidence required to justify the warrantless seizure and search.

"II.  The conviction for a violation of R.C. 2925.03(A)(4) is in violation of R.C. 2941.25 and a denial of Mr. Rose's rights to protection from double jeopardy guaranteed by Art. I, Sect. 10 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we reverse the decision of the trial court. The apposite facts follow.

Officer Mike Butler arrested Demetrius Rose and charged him with drug trafficking and possession of criminal tools. During the hearing, Rose moved to suppress the items seized as the fruits of an illegal stop. At the suppression hearing, the state offered evidence that the stop was justified because the Cleveland police were acting on information provided by an anonymous phone call. The caller told the police that they could find an Uzi firearm in the passenger compartment of Demetrius Rose's white El Camino. No further information was provided. The call was received on November 3, 1994, but not acted upon until the following day.

Officer Butler stated that he and his partner received the anonymous phone caller's information at roll call. Since they knew Rose and knew where he frequented, they decided to go to that location, E. 80th and Cedar. Upon arriving they observed Rose in the white El Camino with a passenger in the front seat.

At some point, the passenger got out of the vehicle and ran. Thereupon, Officer Butler notified dispatch of the passenger's action and of his intention to stop the vehicle.

Officer Butler testified that Rose was no stranger to the police. In fact, he had numerous arrests for drug activity, and they knew that he would be at E. 80th and Cedar.

Officer Butler initially described the stop as a traffic stop. However, later during his testimony, he admitted that his purpose for stopping the car was to find out if it contained an Uzi.

"Q: And you indicated you stopped it, correct? I know you said traffic stop, but what was your purpose of stopping it at that time?

"A: To investigate the allegation of the Uzi."

Officer Butler testified that he approached Rose's car and asked for his driver's license. When Rose was unable to produce one, Officer Butler asked him to exit the car, patted him down, and placed him in the back of the patrol car. The pat-down search of Rose's person revealed no weapons. While Rose was in the police car, Officer Butler's partner checked to see if Rose had a valid driver's license.

Officer Butler further testified that he again approached the El Camino with his flashlight. He opened the hood and checked the engine area to see if the gun was there. No gun was found.

Officer Butler heard the dispatcher state that Rose's license had been suspended. Officer Butler then decided that he had to tow the vehicle. After completing his search of the firewall area for the Uzi, Officer Butler decided to conduct an inventory search of the vehicle to prepare it for towing. Officer Butler described

the purpose for the inventory search as "to log any and all properties inside, personal, things of that nature, check for damage to the vehicle and also to check for contraband."

Officer Butler searched the interior of the car, including the interior vent system, which he described as a "known area for contraband, specifically drugs." He stated that the vents appeared to have been tampered with and some of them were turned all the way around. Officer Butler removed the center air vent and spotted the end of a plastic bag which was protruding. Officer Butler thought that it could possibly contain drugs, although none were visible at the time. He then pulled the bag out and discovered that it contained large chunks of a substance later identified as crack cocaine. Officer Butler Mirandized Rose and placed him under arrest.

On cross-examination, Officer Butler stated that the police department did not corroborate the anonymous tip, nor did they know of the identity of the caller. Officer Butler admitted that Rose was not stopped for a traffic violation but was stopped solely on the anonymous tip. After hearing the evidence, the trial court denied the motion to suppress. On August 28, 1995, pursuant to a plea agreement, Butler pleaded no contest to the indictment. He was found guilty and sentenced to three to fifteen years on count one and three to fifteen years on count two, with three years' actual incarceration. He was also sentenced to six months on count three. The sentences were ordered to be served concurrently. This appeal followed.

Rose's first assigned error raises the question whether the anonymous caller's information to the police contained sufficient indicia of reliability to justify Officer Butler's investigatory stop of Rose's car. The issue is best resolved by following the law of *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301.

In *Alabama v. White,* the caller gave information regarding Vanessa Rose White. The caller said that White would be leaving 235–C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would go to Dobey's Motel, and that she would possess an ounce of cocaine inside a brown attache case. The officers then proceeded to the location, where they observed for themselves each of the particularizations outlined by the caller. The officers then stopped the vehicle, informed White of their suspicion, and asked if they could search, which she allowed.

The United States Supreme Court held that "although it is a close case, we conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car." *Id.* at 333, 110 S.Ct. at 2417, 110 L.Ed.2d at 310. To

define "totality of the circumstances," the court looked to the quantity and quality of both the content of the information possessed by the police and its degree of reliability in order to assess the sufficiency of the officer's reasonable suspicion. *Id.* at 330, 110 S.Ct. at 2416, 110 L.Ed.2d at 309.

The court concluded that content and reliability were the factors that would support the officer's reasonable suspicion. The reasonableness of the suspicion was based on the ability of the caller to predict the suspect's behavior. The court said that this fact is so important because "[t]he general public would have had no way of knowing that [the defendant] would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Id.* at 333, 110 S.Ct. at 2417, 110 L.Ed.2d at 310.

Here the information Officer Butler received was the make of the car, Rose's identity, and the allegation of an illegal weapon. Under *White*, this information is not sufficiently reliable because it does not predict Rose's future behavior. Requiring anonymous tips to contain information about future events or behavior also protects against overzealous police officers who might otherwise conduct a search based upon a hunch and later make a vague claim that the search was the result of an anonymous tip concerning criminal activity.

Additionally, predicting future behavior is crucial because it gives the officer the opportunity to observe firsthand the suspect's activity and to corroborate the caller's information, which also gives credibility to the source. In *White*, for example, before the officers located the contraband they knew particulars about the suspect. They knew that she would be leaving a certain place. They knew the time. They knew that she would be driving a certain car. They knew that she would be carrying a certain bag and in that bag was cocaine. Her behavior and events were predicted before the contraband was located and seized. Also, the contraband was found where the caller said it would be.

Here, there was no behavior predicted, and the information was a day old. Besides, the caller's information was not correct. The officer did not find an Uzi during the search.

To meet the *Alabama v. White* standard, the caller's information should have shown special familiarity. In this case, examples of special familiarity might include information about the whereabouts of the car, a description of the interior of the car and its relationship to where the gun was located, information about what Rose was doing with the gun, and an explanation of whether the caller saw him put the gun in the car and, if so, when. These facts would have shown

insider knowledge and special familiarity. Furthermore, "when significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest, but also that he was well informed, at least well enough to justify the stop." *Id.*, 496 U.S. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310.

Moreover, the Supreme Court in *Alabama v. White* held that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantity of suspicion than would be required if the tip were more reliable." *Id.* at 330, 110 S.Ct. at 2416, 110 L.Ed.2d at 308–309. Here, the officers needed more information before they could justifiably stop Rose's car. "Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Id.* at 329, 110 S.Ct. at 2416, 110 L.Ed.2d at 308. It is the stop that controls this case, not what the officers learned afterwards.

Having concluded that the investigatory stop of Rose's car was improper, we conclude that the evidence subsequently taken from the car was illegally obtained and should have been suppressed. We also conclude that the search of the heating vents was not proper as part of an inventory search.

An inventory search of an automobile is legal only if the automobile is legally impounded and the inventory search is not merely a pretext for an investigative search. *State v. Congeni* (1995), 104 Ohio App.3d 726, 733, 663 N.E.2d 357, 362. In this case, because Rose had no driver's license and there was no one else available to take the car, it was subject to impoundment. However, while Butler testified that he conducted inventory searches in order to "log any and all properties inside, personal, things of that nature" and to "check for damage to the vehicle," he also stated that one of the purposes of an inventory search was to "check for contraband."

Officer Butler's testimony reveals that the inventory search was undertaken in order to search for contraband as well as to prepare an inventory of the car's contents. The Ohio Supreme Court has held that searches conducted with a dual purpose will be upheld if any single purpose is deemed valid. *State v. Evans* (1993), 67 Ohio St.3d 405, 410, 618 N.E.2d 162, 167–168. As discussed above, the car was properly subject to impoundment and an inventory of its contents was a valid purpose for searching the car.

However, the search of the vent area exceeded the scope of a proper inventory search in this case. Officer Butler testified that, during inventory searches, "we go ahead and check the interior vent system." However, when asked why the interior vents were checked, he made no mention of an effort to preserve and document the car's contents but instead replied that the vent was searched

because it is a known area for contraband, specifically drugs. Accordingly, even if we find that the inventory search of the car was properly conducted in anticipation of the car's impoundment, Butler's testimony revealed that the search of the air vents was not motivated by any of the legitimate purposes for inventory searches. See *Congeni,* 104 Ohio App.3d at 733, 663 N.E.2d at 362. (The inventory search must aim at securing or protecting the car and its contents.) Therefore, the evidence seized from the air vents should have been suppressed. Rose's first assignment of error is sustained.

In his second assignment of error, Rose argues that his convictions for violation of R.C. 2925.03(A)(4) and 2925.03(A)(2) violated his rights to protection from double jeopardy. Under R.C. 2925.03(A)(4), Rose was charged with possession of an amount of cocaine equal to or exceeding the bulk amount. Under R.C. 2925.03(A)(2), Rose was charged with preparing for shipment, shipping, transporting, delivering, preparing for distribution, or distributing cocaine with knowledge or reason to believe it was intended for sale or resale.

Rose argues that he should not have been convicted of both offenses because they were allied offenses of similar import. To determine whether two offenses are allied, we must compare the elements of each crime to determine whether the elements of each crime are so similar that commission of one crime would result in the commission of the other. *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 549 N.E.2d 520. However, R.C. 2925.03(A)(2) includes an element that 2925.03(A)(4) does not—that possession of the cocaine is "incident to preparation for shipment, transportation, delivery or distribution of the cocaine through a sale." *State v. Jordan* (1992), 73 Ohio App.3d 524, 542, 597 N.E.2d 1165, 1175. Accordingly, Rose could properly have been convicted of both offenses. Rose's second assignment of error is without merit.

*Judgment reversed.*

JAMES D. SWEENEY, P.J., and JAMES M. PORTER, J., concur.