The STATE of Ohio, Appellee,

v.

CLARK, Appellant.

[Cite as *State v. Clark* (2000), 139 Ohio App.3d 183.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75827.

Decided Sept. 5, 2000.

184

*William D. Mason*, Cuyahoga County Prosecuting Attorney, and *Daryl T. Dennie*, Assistant Prosecuting Attorney, for appellee.

*James Draper*, Cuyahoga County Chief Public Defender, and *Darin Thompson*, Assistant Public Defender, for appellant.

ANNE L. KILBANE, Judge.

This is an appeal from an order of Judge Frank J. Celebrezze, Jr. Richard Clark claims it was error to deny his motion to suppress evidence of drug possession. He claimed a violation of his Fourth Amendment rights because (1) an anonymous tip, that a person wearing clothing similar to his would be in an area, did not justify the CMHA police stopping him, (2) there was no reasonable suspicion that he was dangerous to justify searching him, and (3) there was no evidence that the criminal nature of the object in his jacket was immediately apparent to the police. We agree and reverse.

On February 14, 1998, at about 9:18 p.m., Clark, then nineteen years old, who lived at 10706 Grandview Avenue in Cleveland, was standing on the sidewalk outside 2471 Morris Black Place, two blocks north of his home. He was wearing a "feather puffy jacket." Cleveland Metropolitan Housing Authority ("CMHA") Officer Jerome Ramsey and his partner, Officer Earl Brantley, were on a special attention detail to watch for drug activity and gambling in the Morris Black Place area. Ramsey testified that at 7:00 p.m. he had spoken with an unidentified female in the Woodhill Road–Woodland Avenue area who had always given reliable information. He stated that she advised them of "his activity," "a description of clothes," "where they were located," and "things of that nature." At no time during the suppression hearing was any further information elicited: not the nature of the activity, not the type, color or condition of clothing, nor a description of the "suspect." All one can glean from the transcript is that the "suspect" was a male who would be in the vicinity of a Morris Black Place parking lot.

Ramsey stated that during his third visit that night to a particular parking lot, he expected to see someone, noticed Clark, alone, standing on the sidewalk, and became suspicious when Clark started walking toward them. He stopped Clark and questioned him. Clark stated that he was visiting his girlfriend and gave his name, date of birth, and address. Ramsey relayed this information to a CMHA dispatcher to check the LEADS computer system for arrest warrants for Clark and to verify that he was not a Morris Black Place resident. After learning from the dispatcher that there were no warrants for Clark, and although Clark had been cooperative and gave no indication that he was armed or dangerous, Ramsey stated that he and Brantley frisked him down "just for our safety."

Ramsey claimed that he felt, through the right sleeve of Clark's puffy feather jacket, something he believed to be a small bag of marijuana, withdrew it, advised Clark that he was being cited for a minor misdemeanor offense, and then discovered a second bag. He claimed that, simultaneously with this discovery of the marijuana, Brantley pulled a bag containing three rocks of suspected crack cocaine from Clark's left sleeve. Ramsey claimed that the continued search was "incidental to arrest." Brantley did not testify due to illness, so the record does not reveal what he felt when he patted down Clark's left sleeve.

On April 20, 1998, on a single-count indictment, Clark was charged with possessing less than one gram of crack cocaine, a violation of R.C. 2925.11, drug possession, to which he pleaded not guilty. When the motion to suppress evidence was heard and denied on October 28, 1998, he changed his plea to no contest and was sentenced to eleven months' imprisonment, which was suspended, and placed on eleven months' probation. In lieu of a $500 fine, probation fee, and court costs, he was to perform two hundred twenty hours of community work service.

Assignment of Error I states:

"I. The trial court erred in denying the motion to suppress the evidence obtained in violation of the Fourth Amendment where the state failed to establish that the police had reasonable suspicion that appellant was engaged in criminal activity to justify the stop of appellant."

Assignment of Error II states:

"II. The trial court erred in denying the motion to suppress evidence obtained in violation of the Fourth Amendment where the state failed to establish that the police had sufficient reasonable suspicion that appellant was dangerous to justify the search of appellant."

Clark challenges the propriety of the officers' investigative stop and subsequent protective search pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The state counters that an anonymous tip with specific

details that are corroborated by the police is a valid basis for an investigatory stop and weapons search and that their suspicions about drug activity warranted the weapons search. It is the state's position that this court is bound to accept the judge's determination as the trier of fact because it is supported by competent credible evidence.

Under *Terry,* police may make investigative stops of individuals suspected of criminal activity. However, such investigative stops, while limited, still constitute Fourth Amendment seizures of the person, and, to satisfy a test of reasonableness, the state is required to justify such intrusions upon its citizens. Since *Terry,* courts across this state and the nation have attempted to identify the "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. Assuming that this standard is met and the *Terry* stop is justified, a court must still determine whether the *Terry* protective weapons search is justified, that is, whether the officer reasonably suspects that the person he is investigating is armed. *Id.* at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907–908.

 When reviewing a warrantless search, this court will reverse a judge's findings of historical fact only upon clear error, but makes a *de novo* determination when applying those facts to the law; whether a search was reasonable upon particular facts is a legal question. *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911; *State v. Harris* (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7, 9. The state has the burden to prove the intrusion reasonable. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889. Although the state entreats this court to give deference to the judge's factual findings, we cannot comply because the judge made none. He simply announced his ruling at the end of the hearing without stating any factual findings on the record or issuing any written findings at a later time. We assume, therefore, that the historical facts necessary to the decision of this case are contained in the transcript of the suppression hearing.

The facts themselves are straightforward and not in dispute because only one witness testified. A single witness does not present a dispute of fact; if the witness contradicts his own testimony, the record might be unclear, but that does not make it disputed. The dispute here concerns interpretation of those facts, a question we undertake *de novo.*

 The first question is whether the initial stop was justified. Ramsey and his partner were in the area for "special attention checks" related to illicit activities but also had been notified by an informant to look for an individual wearing clothes purportedly similar to those that Clark was wearing. Although Ramsey testified that Clark matched the description, he did not state what

articles of clothing he was told to look for or what articles of clothing Clark was wearing that matched the description. Ramsey mentioned only that Clark was wearing "one of those feather puffy coats" but failed even to state whether this was one of the articles of clothing he was looking for.

Even if Ramsey's informant had told him to look for a person wearing a "feather puffy coat," this hardly qualifies as the type of corroborative information needed to verify a tip and create reasonable suspicion because it was neither a secret nor a surprise that Clark or anyone else would be wearing such a jacket in February. Furthermore, Ramsey's informant apparently told him nothing about Clark's activity other than to state that he would be present in the area and would be wearing clothing. [1]

■■■■ The state correctly asserts that an informant's tip need not carry the same indicia of reliability when used to justify a *Terry* stop as when used to justify issuance of a search warrant. However, the informant's tip must do more than tell police they will find a man wearing a coat outside a building. This court applies the "totality of the circumstances" test to assess "the quantity and quality of both the content of the information possessed by the police and its degree of reliability" to decide whether a stop is justified. *State v. Rose* (1997), 118 Ohio App.3d 864, 868, 694 N.E.2d 156, 159. In *Rose*, this court required at a minimum that an informant's tip contain information about future events or behavior that can then be corroborated by police. *Id.*

Predicting that an individual wearing a coat will be seen outside a particular building falls far short of the information necessary to create a reasonable suspicion of criminal behavior. The informant apparently did not specify a time when Clark would be present at Morris Black Place, as Ramsey and Brantley passed by the area twice without seeing him. Moreover, the informant apparently made no allegations that Clark was involved in criminal behavior. Ramsey testified only that he was informed that Clark would be in the area and that he suspected him of loitering. The officers did not observe Clark's behavior, seeing him less than one minute before stopping him.

■■■ The general "special attention check" issued for the area does nothing to create reasonable suspicion in a particular case. If this were so, any individual found in an area so designated would be a criminal suspect subject to a *Terry*

---

1. We feel it necessary to point out that we are not criticizing Ramsey's testimony as that of an inarticulate policeman whose testimony has been taken out of context by an artful defense attorney. The transcript reveals that Ramsey's testimony would have been even more lacking had Clark's lawyer not cross-examined him because he fleshed out facts left untouched by the prosecutor. Ramsey was not asked basic questions necessary to support the stop and search, most notably concerning the details of the informant's tip. We can only conclude that there are no supporting details.

stop. Even in high crime areas, a citizen is entitled to the presumption that he obeys the law. The investigatory stop in a high crime or "special attention" area still requires specific, articulable facts about the individual suspect or it is nothing more than random harassment.

The random stop of an individual in the theater district is more likely to reveal a theater patron than a stop in another area, but this does not mean that all persons in the theater district are theater patrons or can reasonably be suspected of being theater patrons (at least in the sense necessary to justify government intrusion), even if found there regularly. That a person might be found in a particular area is not a "specific fact" because it is subject to too many competing inferences to make it so. The testimony offered at the hearing failed to meet the state's burden of proving reasonable suspicion of criminal activity based upon specific articulable facts to justify its stop of Clark. The first assignment of error is well taken.

We address the second assignment of error because, even if we could somehow find that Clark's stop was justified, the subsequent protective weapons search presents an extraordinary set of facts that merit reversal on their own. These facts are extraordinary because under normal circumstances, a *Terry* search is almost always justified if the underlying stop is reasonable. If the police have a reasonable suspicion of criminal activity justifying the stop, the criminal suspicion usually provides a reasonable basis for the protective weapons search. *State v. Evans* (1993), 67 Ohio St.3d 405, 413, 618 N.E.2d 162, 169. However, the record shows that even if Clark's stop was reasonable on suspicion of "loitering," a weapons search was not justified.

After stopping Clark and asking initial questions of him, the officers ran a check on the information Clark had given them and learned that Clark, as he had told them, did not live at Morris Black Place. Having obtained some initial verification that Clark had been, in fact, "loitering," the officers then decided to do a protective weapons search. Clark had been cooperative throughout the stop, and Ramsey was not subjectively concerned about his safety.

While it is true that an officer's subjective statements or feelings have no bearing on whether the weapons search was reasonable, they are significant here. First, loitering was the only remotely specific and articulable suspicion of crime the officers had; while suspicion of more serious crimes, including drug possession, might reasonably lead to suspicion of weapons as well, a suspicion of loitering does not. Second, the officers were not concerned for their safety at the beginning of the encounter, throughout their initial interview, while waiting for the dispatcher's information, or at the time they conducted the search. The record does not indicate how long it took to gather information from Clark, relay that information to the dispatcher, have that information checked at the station,

and relayed back to the officers. However, the process provided Clark ample opportunity to reach for a weapon if he had one. Assuming the officers had at least an arguable objectively reasonable belief that Clark was armed when they first stopped him on suspicion of loitering, this belief objectively dissipated as they conducted the stop and interview with Clark's full cooperation. In *Evans,* the court found a *Terry* search reasonable because events escalated a traffic stop into a dangerous encounter. *Evans,* 67 Ohio St.3d at 412–413, 618 N.E.2d at 169. Here the events showed that no danger existed.

Nothing about the information obtained from the dispatcher changed the situation. The officers already knew that Clark did not live at Morris Black Place. Whether this was a reason to arrest Clark is questionable but irrelevant because they had no intention of arresting Clark for loitering. Whether it created the reasonable suspicion for a *Terry* stop also is irrelevant. Clark had already been stopped. The only question is whether finding out that Clark was not a resident of the area suddenly made him more likely to be armed and dangerous when he had not been so up to that time. The answer is no.

If the police were not going to arrest Clark for loitering, the investigatory stop essentially finished when he admitted he was not a resident of Morris Black Place. Clark was then suspected of nothing else. The *Terry* search in this case plainly was not intended as a search for weapons or the officers would have conducted the search earlier. The *Terry* doctrine was used here to carry out a warrantless search for drugs without the burden of probable cause. We find merit in this assignment of error.

We comment on the concurring opinion only because its representation of the record in this case contrasts so starkly with the record before the court. Our opinion is not based on Officer Ramsey's failure to remember Clark's clothing and activities in specific detail but on his utter inability to recall or even relate any substantive detail of the tip corresponding with Clark's appearance or behavior on the night in question, and the complete lack of *any* testimony that the informant described Clark's activities. On direct examination, Ramsey's entire description of the tip consisted of the following:

"Q. What did they say?

"A. They describe a description of clothes where they were located. Things of that nature."

On cross-examination, Clark's attorney gave Ramsey an opportunity to add further details, but Ramsey had none, testifying as follows:

"Q. What other information did you gain before showing up at Morris Black Place at 9:18 that night?

"A. She just gave us his description and the description of his clothes."

Not only did Ramsey completely fail to articulate any part of Clark's description as related by the informant, at no time did he ever detail the substance of the tip concerning Clark's "activities," other than his presence in the area.

Although the concurrence claims that Clark was suspected of involvement in drug activity, nowhere in the transcript does Ramsey say that the tip alleged such activity, and nowhere in the transcript did Ramsey allege that he observed Clark engaged in any suspected drug activity. He testified only that the area was under "special attention checks" for drug and gambling activity and loitering. These special attention details were not specifically related to Clark and could not be used to add details to an otherwise uninformative tip alleging only that Clark would be present in the area. While I agree with the concurrence that the record "clearly shows" that the officers suspected Clark of drug activity, the record also shows that the officers could not point to specific facts or circumstances justifying that suspicion. The officers' only *reasonable* suspicion of Clark's criminal activity was that he might be loitering.

The concurrence also argues that the officers had a reasonable suspicion that Clark was engaged in felonious drug activity because he was "loitering or acting suspicious." The only testimony by Ramsey that Clark exhibited "suspicious" behavior on seeing the officers is the following:

"Q. Now what did Mr. Clark do as you arrived?

"A. Actually, when he observed our presence, he just kind of came toward us, like he wanted to walk away. That made it suspicious to us. When he observed our presence as we entered the parking lot.

"Q. What did you do?

"A. Actually, he walked away, he walked towards us, walking southbound."

In essence, Officer Ramsey's suspicion was aroused because Clark, who had been standing in front of 2471 Morris Black Place (itself a suspicious activity), began walking away from the building when he saw the officers arrive. The problem for the state and the concurrence is that this supposed suspicious activity (which Clark apparently could not avoid exhibiting) cannot support any reasonable belief that Clark was involved in drugs. The concurrence cannot cite any portion of the record showing that the informant alleged details indicating Clark's involvement with drugs or that the officer saw Clark exhibit any behavior evidencing drug activity. Until such time as these specific facts and circumstances are pointed out, this court will accept its evaluation of the record as reasonable. A totality of circumstances is still based on the sum of specific circumstances; one cannot avoid assessing details by arguing from unsupported generalities.

■ Finally, the recent Ohio Supreme Court decision in *State v. Jones* (2000), 88 Ohio St.3d 430, 727 N.E.2d 886, defeats the state's argument on another ground. Even if the state could somehow justify Clark's stop and initial search, under no circumstances could it justify the search and seizure of the crack cocaine. Because the officer who searched Clark's other sleeve and found the crack did not testify, the state could not justify the seizure as incident to a *Terry* weapons search. The state therefore argued, both at the suppression hearing and before this court, that discovery of the crack was incident to Clark's arrest for the minor misdemeanor offense of marijuana possession.[2] Pursuant to *Jones, supra,* such a search is unconstitutional.

Assignment of Error III:

"III. The trial court erred in denying the motion to suppress evidence obtained in violation of the Fourth Amendment where the state failed to establish that the criminal nature of the object in appellant's jacket was immediately apparent to the police officer conducting the frisk."

Because Assignment of Error Nos. I and II have merit, we find this assignment moot. App.R. 12(A)(2).

*Judgment reversed.*

TIMOTHY E. MCMONAGLE, P.J., concurs.

SPELLACY, J., concurs in judgment only.

SPELLACY, Judge, concurring in judgment only.

I concur in judgment only with the majority opinion. As an initial matter, I note that it is not the general practice of this court to name trial judges in appellate opinions. Therefore, I adopt the concurring opinions in *State v. Latson* (1999), 133 Ohio App.3d 475, 483, 728 N.E.2d 465, 471; and *State v. Thomas* (May 13, 1999), Cuyahoga App. Nos. 72536 and 72537, unreported, 1999 WL 304296.

As for substantive matters, the majority apparently presumes that the police officers did not have sufficient grounds to stop Clark. A police officer may make a brief investigatory stop of an individual without a warrant or probable cause where the police officer reasonably suspects that the individual is or has been involved in criminal activity. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Unlike an anonymous tip, a tip from a known, reliable informant

---

2. In the motion to suppress, Clark's lawyer asserted that the officers discovered 3.56 grams of marijuana, well under the amount necessary to make Clark's offense anything other than a minor misdemeanor. R.C. 2925.11(C)(3). The state did not challenge this assessment, and Ramsey admitted that he did not intend to take Clark into custody for the marijuana charge.

exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop. *Florida v. J.L.* (2000), 529 U.S. 266, 269–270, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254, 260.

Officer Ramsey and his partner were assigned to the Morris Black Place area because of complaints about ongoing drug activity, gambling, and loitering. In addition, the police received a tip from a known, reliable informant specifically regarding Clark's activities. The tip included an accurate description of Clark and his clothing. The officers' suspicions were further predicated on their own observations of Clark's peculiar actions in a high drug area.

The majority places great weight on the fact that the prosecution failed to elicit detailed testimony about the clothing Clark was wearing. The majority evidently believes that an accurate description of a suspect is not reliable unless a police officer is able to provide an item-by-item description of the suspect's clothing at a suppression hearing held months later. The majority fails to cite to any case law in support of this proposition.

The majority opinion also indicates that, in order to effectuate a *Terry* stop, a police officer must actually observe the person engaging in criminal activity. In fact, reasonable suspicion is often premised upon conduct that is not itself illegal, such as loitering or acting suspicious. See *United States v. Sokolow* (1989), 490 U.S. 1, 9, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1, 11–12.

Upon review of the suppression hearing transcript, I conclude that Officer Ramsey articulated specific facts, which, under the totality of the circumstances, supported a reasonable suspicion that Clark was engaged in criminal activity. As such, the initial investigatory stop of Clark was justified.

The majority also finds fault with the police officers' protective search of Clark for weapons. "An officer, for the protection of himself and others, may conduct a carefully limited search for weapons in the outer clothing of persons engaged in unusual conduct where, *inter alia,* the officer reasonably concludes in light of his experience that criminal activity may be afoot and that the person in question may be armed and presently dangerous." *Florida v. J.L., supra,* at syllabus.

The majority opinion suggests that the police officers stopped and searched Clark for loitering. This proposition belies the record. The record clearly indicates that the police officers stopped Clark because of suspected drug activity. *"The right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed."* (Emphasis added.) *State v. Evans* (1993), 67 Ohio St.3d 405, 413, 618 N.E.2d 162, 169.. Moreover, Officer Ramsey indicated on several occasions during his suppression hearing testimony that he and his partner frisked Clark for weapons based upon safety concerns.

During the valid *Terry* patdown search of Clark's outer clothing, Officer Ramsey discovered the first bag of marijuana in Clark's right coat sleeve. Under the "plain feel" doctrine, contraband found during a lawful *Terry* search will not be suppressed where an officer pats down the suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent. See *State v. Cloud* (1993), 91 Ohio App.3d 366, 370, 632 N.E.2d 932, 934–935, citing *Minnesota v. Dickerson* (1993), 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334.

At the suppression hearing, Officer Ramsey testified that based upon his experience, viz., a seven-year veteran of the police department with approximately three hundred drug arrests, he recognized that the object he felt in Clark's coat sleeve was a bag of marijuana. Thereafter, the police officers removed the marijuana from Clark's coat, arrested Clark, and discovered the subject crack cocaine incident to Clark's arrest.

Unfortunately, the majority insists on substituting its judgment for that of the trial court with regard to purely factual issues. See *State v. Smith* (1991), 61 Ohio St.3d 284, 288, 574 N.E.2d 510, 515 (when reviewing a suppression hearing, an appellate court may not substitute its own judgment for that of the trier of fact).

Notwithstanding, I would reverse the judgment of the trial court based solely upon the recent opinion of the Supreme Court of Ohio in *State v. Jones* (2000), 88 Ohio St.3d 430, 727 N.E.2d 886.[3] In *Jones,* the court held:

"[A]bsent one or more of the exceptions specified in R.C. 2935.26, a full custodial arrest for a minor misdemeanor offense violates the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, and evidence obtained incident to such an arrest is subject to suppression in accordance with the exclusionary rule." *Id.* at 440, 727 N.E.2d at 895.

In the instant case, Officer Ramsey and his partner arrested Clark for possession of marijuana, a minor misdemeanor. During further search incident to this arrest, the officers discovered the subject crack cocaine. Pursuant to *Jones,* the evidence obtained incident to Clark's arrest must be suppressed.

---

**3.** The court decided the *Jones* case on May 17, 2000, subsequent to the suppression hearing and the oral arguments of this appeal.