JOURNAL ENTRY AND OPINION
Defendant-appellant Claus S. Simpfendorfer appeals from his convictions of Driving Under the Influence, Driving Under Suspension and Possession of Drug Paraphernalia entered in Garfield Heights Municipal Court after his entry of a plea of "No Contest" to the charges against him. Appellant complains that the trial court erred when it overruled his Motion to Suppress, Motion to Dismiss the Charge of Driving Under Suspension, his ALS appeal and granted the state's Motion to Amend the Charge of Possession of Drug Paraphernalia.
The record reflects the following facts which give rise to this appeal. On December 28, 1997, as the result of a traffic stop, Walton Hills Police Officer Stanley Jaworski issued four citations to appellant wherein the offenses were described as follows: (1) "Possession of Drug Paraphernalia," "to wit: found in blue shazing [sic] bag wooden pipe with burnt residue. Claus S. Simpfendorfer did state the blue shazing [sic] bag belongs to him"; (2) "Erratic Weaving Course;" (3) "Operating a Vehicle While Under the Influence of Alcohol and/or Drugs of Abuse"; and, (4) "Driving While Under Suspension." After his arrest, appellant refused to take the BAC test as requested by the officer and an Administrative License Suspension (BMV 2255 form) was entered with the Bureau of Motor Vehicles.
The record demonstrates that at the time of appellant's arrest by the Walton Hills Police Department his license was under suspension for ninety days pursuant to R.C. 4511.191
(Administrative License Suspension) which commenced on December 7, 1997 to extend to March 7, 1998 as a result of an alcohol test result which showed an alcohol concentration of .10 percent or above upon his arrest on December 7 in the Village of Chagrin Falls, Ohio for Driving Under the Influence. On December 22, 1997, prior to his arrest in the matter sub judice, appellant had appealed this underlying ALS. This ALS appeal was granted on January 4, 1998, after his arrest in Walton Hills, on the finding that the Chagrin Falls Officer had failed to inform him of the consequences of a refusal or submission to the breath test.
In this case, appellant filed notice of his appeal of the December 28 Administrative License Suspension on January 8, 1998. On February 2, he filed a Motion to Suppress evidence against him and on February 20, he filed a Motion to Dismiss the Driving Under Suspension charge. Hearing on these matters was held February 20, 1998.
At the hearing, Stanley Jaworski of the Walton Hills Police Department, a police officer of ten years training and experience, testified that at the start of his shift while he was still in the parking lot of the police station, he received a radio dispatch indicating that a green Ford Explorer, license number RYS 552, followed by an off-duty sheriff, was driving erratically on I-77 and exited on Pleasant Valley/Alexander Rd. Jaworski pulled out onto Alexander Road and observed the Explorer swerve three or four times with all four tires going over the double yellow line. Jaworski effected a traffic stop of the vehicle for the violation of "Weaving." Upon his approach of the vehicle, he detected a strong odor of alcohol and noted the driver had glassy eyes and slurred speech. Appellant, the driver of the vehicle, indicated that he did not have his license with him but gave his name and social security number to Officer Jaworski. Appellant admitted that he had been drinking.
Officer Jaworski testified that appellant failed the field sobriety tests which he administered and appellant was unsuccessful on the horizontal gaze nystagmus test. Based upon these indicators it was Jaworski's opinion that appellant was operating his motor vehicle under the influence of alcohol. The LEADS report, which he requested through the police dispatcher, revealed that appellant's license was under suspension. Patrolmen Mancini, Chromanski and Deputy Sheriff Pace were on the scene. Appellant was patted down and placed in Officer Jaworski's patrol car. The passenger of the vehicle, who had also been drinking, was placed in Officer Mancini' s patrol car and advised that the vehicle would be towed.
The officers called for a tow of the vehicle and Officer Jaworski testified that he conducted an inventory search of the vehicle in the presence of Patrolmen Mancini and Chromanski and in accordance with the procedures of the Walton Hills Police Department. A blanket and a shaving kit were in the back seat of the vehicle. Patrolman Mancini opened the unlocked shaving kit for inventory and the officers observed a pipe with residue which appeared to be the type of pipe used for smoking marijuana.
Appellant was taken to the Walton Hills Police Station for booking where he was read both his Miranda rights and the BMV Informed Consent Form 2255 by which he was informed of the consequences of a refusal to take an alcohol breath test if requested by an officer. Appellant then refused to submit to a breathalyzer test. As a result of this refusal, a one-year Automatic License Suspension was imposed upon him pursuant to R.C. 4511.191.
Officer Jaworski's direct testimony being complete, at that point, the prosecutor moved the court to amend the DUS charge from R.C. 4507.02 to 4511.192 (Driving Under ALS Suspension) in conformity with the evidence presented. Counsel for appellant entered no objection to the amendment "as long as it is amended to the proper charge." The trial court subsequently amended the charge to reflect that the Driving Under Suspension charge was brought pursuant to R.C. 4511.192.
On cross-examination, Officer Jaworski admitted that all of the tickets were dated December 28 at 23:45 hours. He stated that after appellant refused to take the breath test, he completed the ALS form and signed it. His signature was witnessed by dispatcher Dolores Mueller and Officer Chromanski. The completed BMV 2255 form was then given to appellant. Officer Jaworski conceded that after the completed form was given to appellant, the Chief of the Walton Hills Police Department entered a correction to indicate the time at which the offense occurred and the Chief initialed the form before it was sent to the Bureau of Motor Vehicles. Officer Jaworski admitted that upon reviewing the document which indicates "Circumstances under which police officers are authorized to tow and/or impound vehicles, "he did not see a provision which includes "driving under the influence." He testified that although the procedure in the book does not state that the police tow all vehicles for driving under the influence, in this case, the vehicle was towed because both parties had been drinking.
On redirect examination, Officer Jaworski admitted that he made the clerical error in the date of the offenses. No further testimony was presented and the exhibits were accepted by the court.
On March 30, 1998, the trial court entered its decision in which it: (1) denied appellant's Motion to Suppress finding that probable cause existed for Officer Jaworski to stop appellant's vehicle, and concluding that the search of the vehicle was made pursuant to police policy of procedure; (2) overruled appellant's ALS appeal; (3) overruled appellant's Motion to Dismiss the charge of Driving Under Suspension; and (4) suspended appellant's license finding him to be a "risk to the public safety."
Pretrial hearing was held on April 8, 1998, on appellant's motion in limine requesting the court to admit evidence regarding appellant's purported "good faith" refusal to submit to the breath alcohol test. The trial court, after "taking into consideration all the facts that appellant requested the court to consider, " ruled it would follow the Ohio Jury Instructions on the evidentiary issue of refusal to submit to the test, thus, effectively denied the motion. Further, over appellant's objection, the trial court granted the prosecutor's request to enter the proper numerical designation under which the charge of Possession of Drug Paraphernalia was brought against appellant, to wit: R.C. 2925.14(C). Finally, over appellant's objection, the trial court amended the Driving Under Suspension charge to reflect the proper numerical designation for the charge of Driving Under Suspension, to wit: R.C. 4511.192, finding that on the day appellant was charged he was under a ninety-day ALS suspension as a result of a positive alcohol test.
At the conclusion of the pretrial hearing, appellant entered a change of his plea to "No Contest" to the charges against him. Officer Jaworski was called to testify to the facts of the case. His recitation of the facts was substantially the same as his testimony at the February 20 hearing. On cross-examination, Officer Jaworski conceded and the state stipulated that on the day of his arrest appellant offered to take a blood test in lieu of a breath test.
Based upon the evidence presented, the trial court found appellant guilty on each count and imposed sentence. Execution of the sentence was stayed pending appeal. In this timely appeal, appellant advances six assignments of error for our review.
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN OVERRULING HIS MOTION TO SUPPRESS EVIDENCE.
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN DENYING HIS APPEAL OF HIS ADMINISTRATIVE LICENSE SUSPENSION.
 III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN DENYING HIS MOTION TO DISMISS HIS DRIVING UNDER SUSPENSION CHARGE.
 IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN GRANTING THE VILLAGE OF WALTON HILLS' MOTION TO AMEND THE CHARGE OF POSSESSION OF DRUG PARAPHERNALIA.
 V. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN REFUSING TO CONSIDER APPELLANT'S MOTION IN LIMINE.
 VI. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN GRANTING THE VILLAGE OF WALTON HILLS' MOTION TO AMEND THE CHARGE OF DRIVING UNDER SUSPENSION.
In his first assigned error, appellant complains that the trial court erred and violated his rights as protected by theFourth Amendment of the Constitution and Section Fourteen, Article One
of the Ohio Constitution when it denied his Motion to Suppress the evidence against him claiming search of the vehicle was invalid because: it was performed prior to the car being secured; impoundment of the vehicle was not proper; the procedures regulating an inventory search were violated; and, the police improperly opened a closed shaving kit during a search "incident to an arrest."
When considering a motion to suppress, the trial court serves as a trier of fact and primary judge of the credibility of the witnesses and the weight of the evidence. State v. Fanning
(1982). 1 Ohio St.3d 19, 20. In reviewing an appeal from a motion to suppress evidence, the appellate court is bound to accept facts as found by the trial court if they are supported by competent credible evidence. State v. Williams (1993), 86 Ohio App.3d 37,41. The application of the law to those facts is subject to review without deference to the trial court. State v.Anderson (1995), 100 Ohio App.3d 688.
The record demonstrates that the trial court found "[p]ursuant to the policy of the Walton Hills Police Department, the [appellant's] motor vehicle was inventoried and one wooden metal pipe was found with burnt residue." Thus, in this case, we are bound to accept the factual finding of the trial court that the police officers conducted the search of the vehicle for the purpose of providing an inventory of its contents in accordance with the policy of the police department.
First, appellant, in reliance on State v. Smith (1992),80 Ohio App.3d 377, contends that an inventory search is only justified when the vehicle is in the security of the station house. We find appellant's reliance on Smith to be misplaced. The fact that an inventory search was conducted prior to impoundment does not automatically make the search unreasonable and unconstitutional. See State v. Peaglar (1996),76 Ohio St.3d 496, 501-502. In Peaglar, our supreme court, citing Colorado v. Bertine (1987),479 U.S. 367, with approval, stated that "the exact location of the inventory search is not critical to effectuating the purposes [of an inventory search]" and it, therefore, held that a search conducted prior to impoundment may be reasonable. Peaglar, supra
at 501.
Moreover, in State v. Hathman (1992), 65 Ohio St.3d 403, paragraph one of the syllabus, our supreme court held: "To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with standardized procedure(s) or established routine." See, also,State v. Congeni (1995), 104 Ohio App.3d 726.
Thus, where as here, there is no allegation of bad faith and the inventory search was conducted in accordance with standardized procedures, a vehicle may be inventoried prior to its impoundment without violating appellant's Constitutional rights.
Second, appellant contends that the "Walton Hills Police Department Procedures" do not provide for the impoundment of a vehicle upon the arrest of a driver for driving under the influence of alcohol and, thus, the inventory search of the vehicle was unlawful as not in conformance with police procedures.
In Colorado v. Bertine, supra, the United States Supreme Court gave blanket approval to routine impoundments if authorized by standardized police procedures.
The Walton Hills Police Department Procedures provides the circumstances under which police officers are authorized to tow and/or impound vehicles. However, as appellant correctly asserts the "Procedures Governing the Inventory Towing and Impounding of Motor Vehicles" as entered into evidence at the hearing reveals that there is no provision which provides for the impoundment of a vehicle upon the arrest of a driver for driving under the influence of alcohol. Nonetheless, Section 4, paragraph 9, of these procedures provides that vehicles are authorized to be towed where the "[v]ehicle is being operated by any person who is driving without a lawful license or while his or her license has been suspended or revoked and is located upon a public street * * *."
On appeal, in reliance on State v. Collura, (1991), 72 Ohio App.3d 364, appellant argues that the inventory search was unlawful because the police had no authority to impound the vehicle and should have permitted his passenger to drive the vehicle, thus negating the need for an inventory search. In Statev. Collura, supra, the court found that the impounded vehicle, which was legally parked, could have been removed by the defendant's passenger and, therefore, the impoundment was unlawful. In State v. Gordon (1994), 95 Ohio App.3d 334. this court, distinguishing the facts from Collura, found impoundment of the subject vehicle to be permissible in a case where the driver was subjected to custodial arrest but where no one was available to immediately remove the car for safekeeping. See,also, State v. Brose (June 13, 1994), Warren App. No. CA93-12-103.
The record reflects that while Officer Jaworski was at the scene of the arrest, the police dispatcher apprised him that appellant's driver's license was under suspension. Officer Jaworski noted that the passenger had been drinking. The incident report reveals that the towing company was called "* * * as the passenger Nicole Schumann (sic) behavior was very loud and she was using profanity at the officers." The passenger was subsequently charged with disorderly conduct. Thus, we find that the police officers' failure to permit the passenger to drive the car and the subsequent impoundment and search of the vehicle do not evidence some pretextual motive on the part of the police officers to conduct an evidentiary search. As we stated in Statev. Gordon, supra, "[a]bsent any indicia in the record that the police officers acted in bad faith or in the absence of standardized procedure, this court can but conclude that the police officers comported with the requirements of thefourth amendment." Therefore, we find that the vehicle was inventoried, towed and impounded consistent with the written departmental procedures and not unlawful.
Third, appellant complains that the police failed to comply with departmental regulations and asserts that the entries made on appellant's property envelope are insufficient to satisfy the requirements of the procedures for an inventory.
The written procedures for the inventory require in pertinent part that "[t]owed/Impounded vehicle report forms (Tow-slips) shall be filled out as completely as possible with all information available, including: a) Tow truck driver signature for resposibility, b) Release Condition(s), c) Vehicle Damage, d) Comprehensive list of all valuables and property within, e) complete list of items removed from vehicle."
From the evidence in the record, we see that the listing of items on the "personal property envelope" merely identifies appellant's personal property which was logged in at the police station by the officer upon the arrest of appellant. The failure of this listing on the personal property envelope to identify any additional items which may have been inventoried within the vehicle prior to its impoundment does not evidence a failure of the police to comply with the inventory procedures. Thus, there is no evidence in this record to demonstrate that the police failed to comply with the regulation as put forth in the Walton Hills Police Department "Procedures Governing the Inventory, Towing and Impounding of Motor Vehicles."
Finally, appellant, in reliance on State v. Brown (1992),63 Ohio St.3d 349, complains that the opening of a container, his shaving kit, during a search "incident to arrest" but after the suspect is handcuffed, is illegal. The factual finding of the trial court determined that the search of the vehicle performed in the field was an inventory search and not a search incident to the arrest of appellant. Thus, we find that the reasoning ofBrown, supra, is inapplicable to the search conducted in this matter.
In State v. Congeni, supra, this court held that if during a valid inventory search of a lawfully impounded vehicle a law enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of containers.
The procedures of the Walton Hills Police Department provide in pertinent part: "Scope of the inventory shall include the vehicle exterior, interior, engine compartment, glove compartment and trunk. All other open or closed, locked or unlocked compartments or places of storage also shall be inventoried for contents. Allother open or closed, locked or unlocked boxes, bottles, bags,coolers, suitcases, briefcases, containers within containers thatare in or attached to the outside of the vehicle shall beinventoried for its contents. * * * " (Emphasis added.) Therefore, in accordance with the law as applied to the facts found by the trial court, we find that the inventory search of the vehicle by the Walton Hills Police Department was executed in accordance with the standard procedures and routines of the department and was, therefore, a valid search which satisfies the requirements of both the Fourth Amendment of the Constitution and Section Fourteen, Article One of the Ohio Constitution. Because we find no error in the trial court's application of the law to the facts, we conclude that the trial court did not err when it denied appellant's motion to suppress. Appellant's first assignment of error is without merit.
In his second assigned error, appellant complains that his ALS appeal should have been granted because the trial court failed to provide a "properly completed BMV 2255 form" to appellant as required by R.C. 4511.191(D)(2) claiming that the form was defective because the changes made on the form by the Chief of Police were made after the form was given to the appellant and the Chief failed both to sign the form and to have his signature witnessed.
R.C. 4511.191(D) (2) provides:
 The sworn report of an arresting officer completed under division (D) (1) (c) of this section shall be given by the officer to the arrested person at the time of the arrest or sent to the person by regular first class mail by the registrar as soon thereafter as possible, but no later than fourteen days after receipt of the report. An arresting officer may give an unsworn report to the arrested person at the time of the arrest provided the report is complete when given to the arrested person and subsequently is sworn to by the arresting officer. As soon as possible, but no later than forty-eight hours after the arrest of the person, the arresting officer shall send a copy of the sworn report to the court in which the arrested person is to appear on the charge for which the person was arrested.
R.C. 4511.191(D)(2) can be read in pari materia with the rest of the code section dealing with implied consent if it is viewed in that light.
In State v. Haghighi (Aug. 30, 1996), Portage App. No. 96-P-0012, unreported the court stated: "' * * * where a statute is found to be subject to various interpretations, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent.`" State exrel. Zonders v. Delaware Cty. Bd. of Elections (1994), 69 Ohio St.3d 5,10, 630 N.E.2d 313, quoting Cline v. Ohio Bur. of Motor Vehicles (1991), 61 Ohio St.3d 93, 96, 573 N.E.2d 77.
Here, the copy received by the arrested person, i.e., the appellant, can be challenged as to its authenticity. Its purpose is clearly ministerial, not jurisdictional. The statute appears to be drafted to ensure that the arrested person is provided adequate notice. Each of the provisions in R.C. 4511.191 (D) (2) is designed to guarantee that a defendant is provided such notice. By its terms, R.C. 4511.191 (D) (2) allows an officer to provide an unsworn report to the arrested person so long as the report is complete and is later sworn to by the officer. There is no jurisdictional requirement that the other options in R.C.4511.191 (D) (2) also be satisfied, as the arrested person has received full notice. Further, this type of notice is different than the need for a "sworn report" which must be sent to both the BMV and the court. As to the court, the officer may not be personally available to authenticate the report. The sworn report is absolutely necessary for the BMV, in that it immediately acts on the sworn report and suspends the license.
The record reveals that the arresting officer filled out the form completely, signed the form, the form was witnessed and the officer's signature was acknowledged before a notary. All the requirements of R.C. 4511.191 (D) (2) were met at the time appellant received his copy of the sworn report.
It is clear that substantial compliance with the requirements was met in this case and appellant properly received full notice.
Moreover, R.C. 4511.191 (H) (2) provides:
 If the person appeals the suspension at the person's initial appearance, the scope of the appeal is limited to determining whether one or more of the following conditions have not been met:
 (a) Whether the law enforcement officer had reasonable ground to believe the arrested person was operating a vehicle upon a highway or public or private property used by the public for vehicular travel or parking within this state while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or with a prohibited concentration of alcohol in the blood, breath, or urine and whether the arrested person was in fact placed under arrest;
 (b) Whether the law enforcement officer requested the arrested person to submit to the chemical test designated pursuant to division (A) of this section;
 (c) Whether the arresting officer informed the arrested person of the consequences of refusing to be tested or of submitting to the test;
 (d) Whichever of the following is applicable:
 (i) Whether the arrested person refused to submit to the chemical test requested by the officer;
 (ii) Whether the chemical test results indicate that the arrested person's blood contained a concentration of ten-hundredths of one per cent or more by weight of alcohol, the person's breath contained a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath, or the person's urine contained a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of the person's urine at the time of the alleged offense.
Appeal of the ALS will only be granted in accordance with the statutory mandate. The record demonstrates that appellant did not contest the ALS suspension as to: whether Officer Jaworski had reasonable ground to believe appellant was operating the vehicle under the influence of alcohol; whether the request to submit to the test was made; whether he was informed of the consequences; or, whether he refused to submit to the requested test. Thus, no evidence was presented to support the grant of the ALS appeal pursuant to any of the statutory requirements.
Further, the record demonstrates that the trial court overruled appellant's ALS appeal as moot because the court entered its own suspension on the basis that appellant was a risk "to the public safety."[1]
Accordingly, we find whether the trial court determined that the ALS appeal was overruled as moot or whether, alternatively, the ALS appeal was overruled due to the lack of evidence to support the grant of such appeal, there has been no error demonstrated by the trial court's overruling of the appeal. Appellant's second assigned error is without merit.
Appellant's third and sixth assignments of error, having a common basis in law and fact, will be considered together. In these assigned errors, appellant contends that the trial court erred when it failed to dismiss the charge against him, Driving Under Suspension, because no underlying suspension of his license was in existence when the state finally charged him under the appropriate statutory section. Further, appellant complains that the trial court's amendment of the charge of Driving Under Suspension violated Crim.R. 7.
The record demonstrates that on the night of appellant's arrest his driver's license was under Administrative License Suspension pursuant to R.C. 4511.191 for his failure of a breath test administered December 7, 1997 in the Village of Chagrin Falls, Ohio. After being notified that appellant's license was under suspension, the arresting officer wrote "Driving Under Suspension" on the ticket issued to appellant and the officer included the incorrect Revised Code designation, to wit: "R.C.4507.02 (B) (1)." The proper revised code numerical designation for the charge of Driving Under Suspension as it would apply to appellant was R.C. 4511.192. Thus, the record demonstrates that the words of the applicable offense were provided to appellant but the incorrect numerical designation of the statute was included in the charge.
Appellant contends that the "amendment" of the charge by changing the name or identity of the charge violates Crim.R. 7 (D) which provides:
 (D) Amendment of indictment, information, or complaint. The court may at any time before, during, or after a trial amend the indictment, information complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint. No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefor is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.
Crim.R. 7 (D) embodies the protections guaranteed in Section10, Article I of the Ohio Constitution, which provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury." "This provision guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury." Statev. Headley (1983), 6 Ohio St.3d 475, at 478-479 (citations omitted)
In this case, the error occurred in the numerical designation of the charge. Crim.R. 7 (B) governs and provides in pertinent part:
 * * * The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. Each count of the indictment or information shall state the numerical designation of the statute that the defendant is alleged to have violated. Error in the numerical designation or omission of the numerical designation shall not be ground for dismissal of the indictment or information, or for reversal of a conviction, if the error or omission did not prejudicially mislead the defendant. (Emphasis added.)
Thus, from the record before us, we find that the charge of Driving Under Suspension was made in words sufficient to give notice to appellant of the charge against him and the error in the numerical designation did not prejudicially mislead appellant. The trial court corrected the error in the numerical designation to properly reflect the charge against appellant. The statute clearly provides that an error or even an omission of the numerical designation "shall not be ground for dismissal of the indictment or information, or for reversal of a conviction if the error or omission did not prejudicially mislead the defendant." Moreover, the record reveals that counsel for appellant conceded that he had no objection to the amendment as long as the amendment was made "to the proper charge." As such, because on the date of the charge of Driving Under Suspension, appellant was driving the vehicle while his license was under ALS suspension, the addition to the charging document of the correct numerical designation shall not without a showing of prejudice, cause a dismissal of the charge. Appellant's third and sixth assignments of error are both without merit.
In his fourth assignment of error, appellant contends that the amendment of the charge from R.C. 2925.12 to R.C. 2925.14 (C) violated Crim.R. 7 because the amendment changed both the name and identity of the charge.
The record demonstrates that appellant was charged with "Possession of Drug Paraphernalia," "to wit: found in blue shazing [sic] bag wooden pipe with burnt residue. Claus S. Simpfendorfer did state the blue shazing [sic] bag belongs to him," further specifying, "R.C. 2925.12."
We find that the offense, as stated, complies with the requirements of Crim.R. 7 (B) as a statement made in ordinary and concise language sufficient to give appellant notice of the elements of the offense with which he is charged. We note that the numerical designation entered on the ticket by the arresting officer was in error.
It is uncontroverted that at all times appellant was charged with the offense of possession of drug paraphernalia, the wooden pipe with burnt residue. Thus, at all times, appellant was apprised as to the exact nature of the drug paraphernalia found in his shaving bag. Appellant has put forth no evidence nor claim of prejudice either in the trial court or in this appeal.
Therefore, consistent with our analysis in assignments of error three and six above, because the correction of the error in the numerical designation here does not involve the change of the name of the crime charged, "Possession of Drug Paraphernalia," or the identity of the crime charged, the possession of "a wooden pipe" used for smoking marijuana, then the correction of the error is not a ground for dismissal of the indictment nor reversal of the conviction, where the error did not prejudice the appellant. See Crim.R. 7 (B). Appellant's fourth assignment of error is without merit.
In his fifth assignment of error, appellant complains that it was error for the trial court to refuse to consider his Motion inlimine by which he requested the court to decide whether his refusal to submit to a breath alcohol test could be used as evidence against him at trial.
"A denial of a motion in limine does not preserve error for review. A proper objection must be raised at trial to preserve error." State v. Brown (1988), 38 Ohio St.3d 305, paragraph three of the syllabus. See State v. Cherukuri (1992), 79 Ohio App.3d 228.
A motion in limine is "a tentative, interlocutory, precautionary ruling by a trial court reflecting its anticipatory treatment of [an] evidentiary issue." State v. Grubb (1986),28 Ohio St.3d 199, 201-202. When, as in this case, a motion in limine is granted in favor of the state, the issue raised by that motion is not preserved for appeal unless the trial court's tentative ruling is finalized at trial. Id. At trial, it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal. Id. at 203.
The record demonstrates that appellant entered a plea of "No Contest" to the charges against him.
A plea of no contest precludes an appellant from challenging on appeal the denial of a motion in limine. State v. Gabel (1991),75 Ohio App.3d 675, 677. Thus, by pleading no contest to the charges against him, defendant surrendered his right to a trial, including his right to finalize the trial court's ruling on the state's motion in limine. State v. Amburgey (1993), 86 Ohio App.3d 635,637. Accordingly, the ruling on appellant's motion was not preserved for review by this Court. Thus, under Brown and the circumstances of the present case as set forth supra, this court is under no obligation to review appellant's fifth assignment of error.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Garfield Heights Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________ TIMOTHY E. McMONAGLE JUDGE
PORTER, A.J. and ROCCO, J., CONCUR.
[1] R.C. 4511.196 Initial appearance; new suspension of license.
* * *
(B) (1) If a person is arrested as described in division (A) of this section, if the person's driver's or commercial driver's license or permit or nonresident operating privilege has been suspended under division (E) or (F) of section 4511.191
[4511.19.1] of the Revised Code in relation to that arrest, if the person appeals the suspension in accordance with division (H) (1) of that section, and if the judge, magistrate, or mayor terminates the suspension in accordance with division (H) (2) of that section, the judge, magistrate, or mayor may impose a new suspension of the person's license, permit, or nonresident operating privilege, notwithstanding the termination of the suspension imposed under division (E) or (F) of section 4511.191
[4511.19.1] of the Revised Code, if the judge, magistrate, or mayor determines that the person's continued driving will be a threat to public safety.