JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant, the City of Cleveland, appeals from the trial court's judgment granting the motion to suppress of defendant-appellee, Floyd Fields. For the reasons that follow, we affirm.
 {¶ 2} On August 2, 2002, Fields was arrested and charged with aggravated disorderly conduct, resisting arrest and possession of drug paraphernalia. He pled not guilty to the charges and subsequently filed a motion to suppress evidence.
 {¶ 3} Cuyahoga Metropolitan Housing Officer ("CMHA") Thomas Hinkle, the only witness at the hearing regarding appellee's motion, testified that on August 2, 2002, he and an unnamed rookie officer were patrolling the area of 4912 Quincy Avenue in the City of Cleveland in a marked car. Hinkle testified that prior to his 10:00 a.m. to 6:00 p.m. shift, he had received a "special attention" alert regarding drug activity and loitering in the area.
 {¶ 4} According to Hinkle, as he pulled into a parking lot in the area, he observed several persons loitering and saw Fields talking to a woman. As Hinkle turned the car around, he observed Fields engaged in a brief conversation and a hand-to-hand transaction "of some sort" with a black male. Hinkle testified that this "was suspicious activity to myself," so he instructed the rookie officer to "go after" Fields and he "proceeded to go after the other party." Hinkle was unable to apprehend the individual that he was chasing, although his partner stopped Fields.
 {¶ 5} Hinkle, a 12-year veteran of the CMHA police department, testified that the area he and his partner were patrolling is a high drug activity area and that he had made numerous drug-related arrests in the area. Hinkle testified further that he had witnessed drug transactions in the past and Fields' conduct was consistent with such activity.
 {¶ 6} Hinkle testified that he completed a CMHA case report regarding Fields' arrest. Hinkle acknowledged that his narrative in the report of the events leading to Fields' stop and arrest contained no mention of any hand-to-hand transaction or other motions or movements by Fields that would have been consistent with drug activity and stated only that Hinkle observed Fields loitering and having a brief conversation with a black male.
 {¶ 7} On cross-examination, Hinkle testified that Fields' conversation with the black male lasted only for "several seconds," and as the officers approached, the individuals separated and fled the area.
 {¶ 8} The trial court granted Fields' motion to suppress. Subsequently, in response to the City's written request for findings of fact and conclusions of law, the trial court orally announced her findings and conclusions, in pertinent part, as follows:
 {¶ 9} "Officer Hinkle testified that he saw a conversation being had between Mr. Fields and two unknown individuals and one hand-to-hand transaction, quote, of some sort, unquote, page 6 of the transcript.
 {¶ 10} "Officer Hinkle's report failed to mention the hand-to-hand transaction. Officer Hinkle's police report failed to mention the hand-to-hand transaction, page 11 of the transcript.
 {¶ 11} "Officer Hinkle testified that the quote, activity [unquote] he observed was, quote, suspicious to myself, unquote, page 7 of the transcript.
 {¶ 12} "After reviewing the testimony of Officer Hinkle and the arguments of counsel, the Court finds that probable cause did not exist to stop Mr. Fields on that August day.
 {¶ 13} "* * * I believe this case is easily distinguished fromBobo, as I said after the hearing that day. But the exact time of this incident was not ascertained.
 {¶ 14} "The officer said it was quote, daytime. His shift is from 10:00 a.m. to 6:00 p.m. That is page 11 of the transcript. This took place at a public housing estate which men, women and children call their home, possibly a high drug activity. It may be indeed a high drug activity or not.
 {¶ 15} "Bobo was two individuals in a car late at night on a street near an open field with one of the occupants' head bobbing up and down.
 {¶ 16} "After listening to Officer Hinkle, viewing his disposition, assessing his credibility and the manner of his testimony, the Court finds that the only proper ruling would be to suppress this motion — would be to suppress the stop."
 {¶ 17} The City timely appealed from the trial court's ruling. In its sole assignment of error, the City argues that "the trial court committed reversible error when it granted [the] motion to suppress despite reasonable articulable suspicion to investigate suspected drug activity."
 {¶ 18} In Terry v. Ohio (1968), 392 U.S. 1, the United States Supreme Court held that a police officer may make a brief, warrantless, investigatory stop of an individual without probable cause to arrest where the officer reasonably suspects that the individual is or has been involved in criminal activity. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v. Andrews (1991), 57 Ohio St.3d 86, citing Terry,392 U.S. at 21.
 {¶ 19} The City contends that Hinkle's investigatory stop of Fields was based on reasonable articulable suspicion because "there was ample evidence of possible criminal activity based on [Hinkle's] familiarity with the area, the fact that he had previously made arrests for drug activity in the same location, the special attention notice prior to the start of his shift, and his observations of the Defendant while at the scene, which was consistent with drug activity taking place."
 {¶ 20} It is well established that:
 {¶ 21} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990),55 Ohio St.3d 71. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor
(1993), 85 Ohio App.3d 623, 627." State v. Curry (1994), 95 Ohio App.3d 93,96.
 {¶ 22} Here, it is apparent that in resolving issues of fact and assessing credibility, the trial court did not believe Hinkle's testimony that he observed a suspicious hand-to-hand transaction between Fields and another male or his testimony that Fields was engaged in suspicious activity. We find no reason, on this record, to dispute the trial court's finding that Hinkle was not a credible witness. As Hinkle acknowledged, the CMHA report he completed regarding the events leading to Fields' stop and arrest contains no mention of any hand-to-hand transaction between Fields and another male.
 {¶ 23} Without any suspicious activity by Fields, we are left only with the facts that Hinkle observed Fields in a "special attention" area very briefly engaged in conversation with another male and when the officers approached, Fields and the other male fled the scene. Neither of these facts, however, is sufficient to warrant an investigatory stop.
 {¶ 24} As this court noted in State v. Clark (2000),139 Ohio App.3d 183, 188-189:
 {¶ 25} "The general `special attention check' issued for the area does nothing to create reasonable suspicion in a particular case. If this were so, any individual found in an area so designated would be a criminal suspect subject to a Terry stop. Even in high crime areas, a citizen is entitled to the presumption that he obeys the law. The investigatory stop in a high crime or `special attention' area still requires specific, articulable facts about the individual suspect or it is nothing more than random harassment."
 {¶ 26} Moreover, this court has previously held that the mere fact that a person runs when approached by a police officer in an area of suspected drug activity is not sufficient to justify an investigative stop. State v. Walker (Aug. 30, 1993), Cuyahoga App. No. 65050, citingState v. Smith (Mar. 4, 1993), Cuyahoga App. No. 64221; State v. Fincher
(1991), 76 Ohio App.3d 721; State v. Hewston (Aug. 2, 1990), Cuyahoga App. No. 59095.
 {¶ 27} Accordingly, the trial court did not err in granting Fields' motion to suppress evidence. Appellant's assignment of error is overruled.
Judgment affirmed.
JAMES J. SWEENEY, J. and ANTHONY O. CALABRESE, JR., J. concur.