{¶ 61} I respectfully dissent from the majority on Assignment of Error One, because I do not believe that the state met the burden of probable cause for a safety weapons pat down.
 {¶ 62} The initial question is whether or not the police were justified in pulling defendant over. The circumstances leading to the stop included 1) a 911-call to police dispatch for what appeared to be an attempted kidnapping; 2) bystanders directing police to the general location; 3) the police observing a female walking along side a slow-moving vehicle.
 {¶ 63} In assessing both the content of the information possessed by the police and its degree of reliability in order to decide whether a stop is justified, this court applies the "totality of the circumstances" test. Under this test, at a minimum, the informant's tip is required to "contain information about future events or behavior that can then be corroborated by police." State v. Clark, 139 Ohio App.3d, 743 N.E.2d 451,2000 Ohio App. LEXIS 3814, citing, State v. Rose,118 Ohio App.3d 864, 694 N.E.2d 156, 1997 Ohio App. LEXIS 1119.
 {¶ 64} In the case at bar, the information given by unknown persons in the 911-call would have to be corroborated by the nearby crowd of observers and by what the officers observed. Under the "totality of the circumstances," the defense concedes the officers were justified in pulling over defendant's car for investigative purposes.
 {¶ 65} The second question to be answered is whether or not the police officers had probable cause to conduct a protective weapons search, which issue is the focus of defendant's motion to suppress, as well as Assignment of Error One.[1]
 {¶ 66} This court's standard of review of a trial court's judgment on a motion to suppress was set forth in State v.Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 as follows:
In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973),34 Ohio St.2d 250, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564
N.E.2d. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. SeeState v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906.
State v. Coleman, 2002-Ohio-2387, 2002 Ohio App. LEXIS 2356.
 {¶ 67} Because it is the state's burden to justify intrusion of its citizens, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968), 392 U.S. 1, 20 L.Ed.2d 889,88 S.Ct. 1868, at Headnote 1. "The touchstone of [the] analysis under the Fourth Amendment is always the reasonableness in allthe circumstances of the particular governmental invasion of a citizen's personal security." State v. Evans,67 Ohio St.3d 405, 1993 Ohio 186, 618 N.E.2d 162, citing, Pennsylvania v.Mimms, (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331.
 {¶ 68} At the suppression hearing, both defendant and the alleged victim testified that immediately upon stopping the car an officer told defendant to get out of the car, and upon doing so the officer searched defendant, including the inside of his pockets, pulled out the drugs, and arrested him. On cross-examination, this officer, Brian Pfeuffer, testified:
Q. But you hadn't seen the driver do anything, from what you're telling us?
A. No.
Tr. at 13.
 {¶ 69} "Under Terry, limited protective search of the detainee's person for concealed weapons is justified only when the officer has reasonably concluded that `the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others * * *.'"Evans, supra, citing, Terry, supra. Even a stop initiated because of a traffic violation does not automatically bestow upon the police officer the authority to conduct a pat down search for weapons. Evans, supra, at Headnote 5.
 {¶ 70} The circumstances in the case at bar do not satisfy the justification required. Neither officers' testimony revealed any degree of "immediate threat to their safety or the safety of others." Here, as in Coleman, supra, the police officer testified that defendant did not say anything threatening or make any threatening motions prior to being ordered out of the car; nor had the officer observed defendant committing any crime.
 {¶ 71} Officer David Morava testified that he went directly to the alleged victim to investigate the allegations made in the 911-call.
Q. Officer, defense counsel asked you if you saw the defendant breaking laws. When you heard the witnesses talking about jumping up and down, talking about the kidnapping; was that the purpose of you stopping, was to investigate?
A. Absolutely.
Tr. at 9-10. Emphasis added.
 {¶ 72} On cross-examination, Officer David Morava further testified:
Q. Right. And when you pulled up, the first thing you said to the girl — the first thing she said to you: It's all right, this is my boyfriend, we're having an argument?
A. Wasn't the first thing. When we pulled up, I got out of the car and I approached her and I said, are you okay. She said, yeah. That's when she seen all the other police cars coming. She says" It's okay, it's my boyfriend, we're just fighting, we're just fighting.
Q. That was it, right?
A. That is what she told me, yes. Then she sat down on the curb and I went over to find out exactly what was going on.
Tr. at 9. The testimony of defendant and the alleged victim and, indeed, what the officers themselves reported do not demonstrate any immediate threat.
 {¶ 73} The circumstances do not justify Officer Pfeuffer's failure to make any inquiries or to wait to hear the victim's account. Upon observing a smashed car window and a baseball bat on the back seat and without any further inquiry, Officer Pfeuffer removed defendant and immediately proceeded to a pat down "to make sure that defendant did not have any other weapons beside the baseball bat" they saw.
 {¶ 74} Officer Pfeuffer's sole basis to fear for his safety was the smashed window and baseball bat. He explained:
A. The signs of violence I saw were the smashed out windows of the car and the baseball bat, which indicated to me that someone had smashed the car up.
Q. Okay. But you didn't see that?
A. I didn't see anybody actually smash the car, no.
Tr. at 14.
 {¶ 75} In fact, without any inquiry, the officers had no way of knowing when the windows were smashed out. From the testimony we may conclude that since the event had occurred the day before at a different location, when the police arrived there would have been no glass on the street or curbside to support inferring an act of violence had recently occurred.
 {¶ 76} Also, Officer Pfeuffer's testimony relating defendant's explanation validated the alleged victim's explanation. He testified:
Q. As you approached the driver, how was he acting?
A. He was very nervous, his hands were moving around.
Q. Okay. And was he saying anything?
A. He was saying something about having an argument andpointing towards a female juvenile who was on the sidewalk.
Tr. at 11-12. Emphasis added.
 {¶ 77} Defendant and the alleged victim both testified that the police officers did not: 1) ask either defendant or the alleged victim for identification, or 2) question either defendant or the alleged victim as to who or what caused the damage to the vehicle or when. Up to and including the moment the officer patted down defendant, there was no probable cause for a pat down out of fear for the officers or others. In fact, aprudent investigation into the surrounding events would havedetermined that it was the alleged victim that had caused thedamage to the car and that this event had occurred the daybefore.
 {¶ 78} "Under the United States Supreme Court's decision inTerry v. Ohio, (citations omitted) which authorizes a brief investigatory stop of an individual when a police officer has a reasonable and articulable suspicion that criminal activity is afoot, if the officer does not learn facts rising to the levelof probable cause, the individual must be allowed to go on his orher way." Illinois v. William aka Sam Wardlow, 528 U.S. 199;120 S.Ct. 673; 145 L.Ed.2d 570; 2000 U.S. LEXIS 504. Emphasis added.
 {¶ 79} The officers had no basis to suspect that criminal activity was afoot, nor do the circumstances demonstrate any immediate threat to the four officers or others. The man was in the car and the woman quite at liberty. She was not constrained. Nor was she running away. In fact, when she saw the police she reentered the car. It was only the police that she tried to back away from. Officer Morava testified:
A. I approached a female and she told me, she said, it's okay, it's okay, it's my boyfriend, we're just fighting, we're just fighting. And she was trying to walk away from me. I said, no, ma'am, we need to find out. That's when I turned all my attention towards her.
Tr. at 7. Emphasis added.
 {¶ 80} Officer Morova admitted that the alleged victim was unrestrained and free to just walk away. The officer testified:
Q. Officer, when you first saw the defendant —
A. Yes, sir.
Q. — did you see him breaking any laws?
A. Did I see him break any laws at this time?
Q. Yeah.
A. No.
Q. In other words, he was driving slowly along the street — was he going east or west?
A. East on Detroit.
Q. And the girl was on the south side of the street, I take it?
A. She was on the south side of the street a few feet from thecar.
Q. She was walking and they were talking, cars moving. She's on the sidewalk, and they're talking?
A. Well, we couldn't see what they were talking because, I said, all I can see is the silhouette of the male here, like this, leaning over and I can see her kind of backing up from thecar like looking at it, but we were three streets away.
Tr. at 8. Emphasis added. This is not the description of a frightened woman.
 {¶ 81} Further, neither officer testified that he intended to put defendant in the rear of their cruiser while they conducted further investigation — a reason that arguably may have justified a protective pat down search for weapons under these circumstances. Nor is there any evidence that the officers intended to arrest defendant for committing a crime.
 {¶ 82} Because there was no apparent immediate threat of harm to the police officers or others, because the officer conducting the pat down did not attempt to inquire of defendant regarding the circumstances of the 911-call, and did not wait to hear what his partner had learned, because the alleged victim provided a satisfactory explanation of any suspicious circumstances, and because the officers testified that defendant was not belligerent, disobedient, or uncooperative, the officers lacked reasonable suspicion of a crime of violence to justify a pat down of defendant.
 {¶ 83} I would reverse the trial court's order and grant defendant's motion to suppress. Reversal of the trial court's denial of defendant's motion to suppress would render defendant's second assignment of error moot.[3]
[1] This assignment reads:
THE TRIAL COURT ERRONEOUSLY DENIED DEFENDANT'S MOTION TO SUPPRESS BECAUSE THE POLICE OFFICER REACHED INTO DEFENDANT'S POCKETS WITHOUT PROBABLE CAUSE THAT DEFENDANT POSSESSED A WEAPON. THE SEARCH AND SEIZURE WAS ALSO CONTRARY TO LAW BECAUSE THE IDENTITY OF THE OBJECT WAS NOT IMMEDIATELY APPARENT UNDER THE DOCTRINE OF PLAIN FEEL.
[3] ASSIGNMENT OF ERROR II:
TWO OF THE TRIAL COURT'S GUILTY FINDINGS WERE CONTRARY TO LAW BECAUSE DEFENDANT'S PLEAS OF NO CONTEST WERE NOT ACCOMPANIED BY A FACTUAL BASIS TO SUPPORT ALL THE ELEMENTS OF THE OFFENSES.